JOSHUA DOUGHTY *v.* THE SOMERVILLE AND EASTON RAILROAD
Co. and WILLIAM J. LEWIS.

Under the Constitution of New Jersey, adopted June 29th, 1844, an act of the Legislature cannot authorize a Railroad Company incorporated by it to take land for the construction of their road without first making compensation therefor to the owner.

The act incorporating "The Somerville and Easton Railroad Company" does not authorize the taking of land without first making compensation therefor.

*Semble,* that under this act the Company cannot apply for commissioners of valuation and damages until the route of the whole road be located.

But the Chancellor refused an injunction to restrain the Company from applying for commissioners to value a part located, though the whole route was not located.

The assertion of a right, the existence or non-existence of which is properly determinable at law, and the exercise of which will do no injury to the party denying it, is no ground for an injunction.

On the 5th of February, 1848, Joshua Doughty exhibited his
bill, stating, that on the 26th of February, 1847, the Legislature
of this State passed an act to incorporate " The Somerville and
Easton Railroad Company ;" that by the 6th section of the act
it is enacted, that the President and Directors of the said Com-
pany be authorized and invested with all the powers necessary and
expedient to survey, lay out and construct a railroad or lateral
road from one or more suitable place or places in the village of
Somerville, northerly, in the most direct and feasible route to the
Musconetcong valley, passing to the north, or within two miles of
the village of Clinton, in the county of Hunterdon ; thence down
the valley of the Musconetcong, or any valley northward, to the
valley of the Delaware ; thence up the Delaware to one or more
suitable place or places within two miles of the Easton Delaware
bridge, opposite the village or borough of Easton, in Pennsylva-
nia ; with a branch from any convenient point on the route of
said road to the village of Belvidere, not exceeding 100 ft. in
width ; with as many sets of tracks and rails as they may deem
necessary ; and it shall and may be lawful for the said Presi-
dent and Directors, their agents, &c., to enter, at all times, upon
all lands and waters, for the purpose of exploring, surveying,
levelling or laying out the route or routes of such railroad or
lateral or branch roads, and of locating the same ; and to do and

erect all necessary works, buildings and appendages thereof, doing no unnecessary injury to private or other property ; and when the route or routes of such road, or lateral and branch roads, shall have been determined upon, and a survey of such route or routes deposited in the office of the Secretary of State, then it shall be lawful for the said Company, by its officers, agents, engineers, superintendents, contractors, workmen and other persons in their employ, to enter upon, take possession of, hold, have, use, occupy and excavate any such lands, and to erect embankments, bridges, fences, and all other works necessary to lay rails, and to do all other things which shall be suitable or necessary for the completion or repair of the said road or roads ; subject to such compensation as is in the said act after provided : Provided always, that the payment, or tender of the payment, of all damages for the occupancy of lands through which the said road or roads may be laid out be made before the said Company shall enter upon or break ground in the premises, except for the purpose of surveying and laying out said road or roads, unless the consent of the owner or owners of such lands be first had and obtained.

That by the 7th section of said act it is enacted, that when the said Company, or its agents, cannot agree with the owner of the required lands or materials for the use or purchase thereof ; or when, by reason of the legal incapacity or absence of such owner, no such agreement can be made, a particular description of the land or materials so required shall be given in writing, under the oath or affirmation of some engineer or proper agent of the Company, and also the name of the occupant or occupants, if any there be, and of the owner or owners, if known and their residence, if it can be ascertained, to one of the Justices of the Supreme Court, who shall cause the Company to give notice thereof to the persons interested, if known, and in this State ; or if unknown, or out of this State, to make publication thereof as he shall direct ; and to assign a particular time and place for the appointment of the commissioners after named in the act ; at which time, upon proof of the service or publication of such notice, he shall appoint, under his hand and seal, three disinterested, judicious and impartial freeholders commissioners to examine

and appraise the said land or materials, and to assess the damages, upon such notice to the persons interested as shall be directed by the Justice making such appointment. And it shall be the duty of the said commissioners (first having taken and subscribed an oath, &c.,) to meet, at the time and place appointed, and to view and examine, &c.; and to make a just and equitable estimate or appraisement of the value of the same, and assessment of damages, as shall be paid by the said Company, for such lands or materials and damages aforesaid; which report, under the hands and seals of them or any two of them and filed, shall be made in writing within ten days thereafter, together with the aforesaid description, appointment and oaths, in the Clerk's office of the county in which the lands are situate; which report, or a certified copy thereof, shall, at all times, be considered as plenary evidence of the right of the Company to have, hold, use, occupy, possess and enjoy the said land or materials, or of the owner to recover the amount of said valuation, with interest and costs, in an action of debt against the Company, if they shall neglect or refuse to pay the same for twenty days after demand made of their Treasurer; and shall, from time to time, constitute a lien upon the property of the Company in the nature of a mortgage.

That the complainant resides in Somerville. That about 1836 he bought a large property in the upper part of said village, including about 60 acres of land, for which he paid $11,000. That he has since expended large sums in improving the said property; has laid out a part of it in lots; and has erected on many of them stores and dwelling houses, and other improvements; reserving to himself, in front of his mansion house thereon, a necessary and convenient avenue to the main street of said village, and a door yard of convenient and moderate size. That, on or about Jan'y 25th, 1848, the said Company deposited, or caused to be deposited, in the office of the Secretary of State a certain paper writing purporting to be a location of the said railroad from Somerville to the White House road. That by the said writing it appears that the line of said road, as located, runs through the lands of the complainant as follows: (giving the courses and distances through his lands,) making, in the

whole, the distance of 842 feet, in a curvilinear direction, through and over his lands. That the said line is described in the said writing as being the central line; and it is also stated in said location, that the width of the said railroad is 100 feet, being 50 feet on each side of said line, except through Isaac Southard's land, where the width is 30 ft. on the N. E. side, and 75 ft. on the S. W. side of said central line. That the said central line passes the dwelling house of the complainant at a distance of about 50 ft. from the N. E. corner of said house.

That, since the filing of the said location, the Engineer of the Company has stated to the complainant that it was the intention of the Company not to take, in the formation of the road over the complainant's land, more than 40 ft. in width; and that, in passing the complainant's house, they would occupy only 15 ft. on the southerly side of said line, and 25 ft. on the northerly side; but that if this be so, and he has no assurance or knowledge of it other than as above stated, the southerly side of said road will pass within about 30 ft. of his said house, and take a part of his door yard; and that, in either case, he must sustain great inconvenience and damage, and his property be irreparably injured.

That the Company have not agreed with him for the use or purchase of any of his land through or on which they have located their said road.

The bill then sets out a notice, given to him by the Company, that they had, upon the affirmation of their Chief Engineer, given to the Chief Justice a particular description of his lands required for the said road, and made known to him that they could not agree with the complainant for the purchase thereof; and had applied to him for the appointment of commissioners to examine and appraise, &c.; and that the Chief Justice had assigned the 27th of Feb., then next, at 3 P. M., at his office in Trenton, for the appointment of said commissioners.

That, by the terms of the said charter, power is given to the Company to construct a continuous line of said road from Somerville to a point near Easton; and that when the said route of the said road shall have been determined upon, and a survey of said route deposited in the office of the Secretary of State, then

the Company may apply to a Justice of the Supreme Court for the appointment of commissioners to, &c. That the Company have not deposited any survey of the route of said road, as required by the said act, or any other survey than the one before referred to, and which is described as a " Location of the Somerville and Easton Railroad from Somerville to the White House road ;" and he submits that, until such survey is made, the Company have no right to have commissioners appointed. That the Company have no rights or powers save those which have been conferred by the charter. That under pretence of making a road from Somerville to Easton, a distance of about 34 miles, they cannot take private property to construct a road from Somerville to the White House road, being a distance of about 8 miles only, or to any other point short of the point of termination specified in their charter. That the said charter is a contract which the complainant, and all other landholders affected by the route of the said road, have a right to enforce in this court; and that the Company, having neglected to comply with a plain and salutary provision of their charter, should be restrained by this court from further proceeding to have commissioners appointed.

The bill further states, that by the said 7th section of the said charter it is provided, that the report of the said commissioners shall be filed, &c.; and that the said report, so filed, shall be plenary evidence of the right of the Company to occupy and possess the land so to be taken and assessed; and that although, by the 8th section, power is given to the Supreme Court to set aside the said report, at the next term of said court, on good cause shown, and to direct a jury to be struck for the trial of the question of damages between the landholders and the Company, on the application of any land owner who shall be dissatisfied with said report; yet the said 8th section provides, that such application shall not prevent the Company from taking the said land upon the filing of the said report. And the complainant submits, that by the said act the Company are authorized and empowered to take private property, for their use, without having first made compensation to the owner ; and that the said act is against the constitution of this State, and therefore void.

Among the pretences and answers thereto in the bill, is the following: And the said confederates pretend, that this court has no authority or jurisdiction in the premises; and that, if the confederates have not complied with their charter, the complainant may appear before the Chief Justice and object to the appointment of commissioners: whereas, the complainant charges, that the Company are bound by their contract; and that it is peculiarly the province of this court to compel the performance of contracts, and to restrain the Company from exceeding its authority, to the injury of individuals; and more especially as it is doubtful whether any adequate or sufficient remedy can be had in any other tribunal.

The bill prays that the said charter may be decreed to be contrary to the constitution of this State and void; and that the Company, and Wm. F. Lewis, their Chief Engineer, may be restrained by injunction from further proceedings for the appointment of commissioners, upon their said application to the Chief Justice, or upon any other application; and from having any assessment of damages made to the complainant; and from taking possession of, using or occupying, in any way, any land of the complainant; and for further relief.

The injunction was granted as prayed.

On the 8th of Feb., 1848, the injunction was modified so as to permit the appointment of commissioners, without prejudice to the questions involved.

On the 21st of February, 1848, a motion was made to dissolve the injunction, without answer.

An affidavit of the President of the Company was read on the part of the Company, stating that the Company have had several routes surveyed between Somerville and Easton, for the purpose of locating the road between those points, and have expended upwards of $2,500 in making such surveys; that the Directors, being very anxious to get their road surveyed and located, and as much of it as practicable put under contract, employed an engineer for that purpose, very soon after the appointment of Directors; that, the engineer employed failing to take charge of the work according to agreement, it became necessary to employ another engineer, which was done as soon as possible, and the road

put under his charge.   The work from Somerville to the White House road, about nine miles, being comparatively light, the Directors were advised that that portion of the road would be finished by the 1st of January last, but this could only be done by employing the engineers of the Company entirely upon that portion of the road; that it would take several months to locate the whole road to Easton, and it could not be done without abandoning all expectation of completing any portion of the road without great delay.   The Directors therefore determined that it was for the interest of the stockholders, as well as for the accommodation of the public, that they should direct all the energies of the Company to completing the road to the White House, and have accordingly done so ; that the people living in that portion of the county expressed a great anxiety that this should be done.   The deponent says that this is the only reason that the whole road from Somerville to Easton has not been located ; and that it has been and is the intention of the Directors to have their whole road located as soon as the engineers can be spared from the portion of the road now under contract.   He further says, that the Company have a large number of men at work on that portion of the road between Somerville and the White House, and expect, if not unnecessarily delayed and harassed by the landholders, to have it completed by June next ; and that if they are enjoined from taking lands by assessment, the road must for the present be abandoned, to the very great damage of the Company, and the contractors who are constructing the road.

He further says, that the complainant has declared that the Company should never go through his lands where it is at present located, and that he would law the Company to his last moment, or words to that effect.

He further says, that it was in consequence of the delay occasioned in procuring the engineer, and also from the fact that the work has turned out much more difficult than was anticipated, that it was found impossible to finish the road at the time first contemplated.

*B. Williamson* and *F. T. Frelinghuysen* in support of the motion.   They cited 1 *Baldwin's Rep.* 206 ; the act incorporating the Company, in 2 *Harr. Laws,* 284.                           4

*P. D. Vroom* and *A. Whitehead,* contra. They cited 2 *John.
Ch.* ; 6 *Eng. Cond.* ( *h.* 548, 551 ; 1 *Mylne & K.* 154 ; 1 *Railway Cases,* 153, 518, 598, 636 ; 2 *Meeson & Welsby,* 824 ; 2 *Young & Colyer,* 618 ; 7 *Man. & Granger,* — ; 49 *Eng. C. L. Rep.* 288 ; 1 *Baldwin's Rep.* 225, 228, 231 ; 4 *Burr.* 2244 ; 1 *Cowp.* 26 ; 2 *Harr. Rep.* 30 ; 3 *Green's Rep.* 57, 339.*

THE CHANCELLOR. The provisions of the charter affecting the questions now raised are as follows : · The Company is incorporated under the name of " The Somerville and Easton Railroad Company," with a capital of $1,200,000, with liberty to increase it to $2,000,000.

Sec. 6. The President and Directors of the Company are authorized and invested with all the rights and powers necessary and expedient to survey, lay out and construct a railroad, or lateral roads, from Somerville, northerly, in the most direct and feasible route, to the Musconetcong valley, passing within two miles of Clinton ; thence to the valley of the Delaware ; thence up the Delaware to a place or places within two miles of the Easton Delaware Bridge, opposite Easton, Pennsylvania ; with a branch from any convenient point on the route of said road to Belvidere ; and it is made lawful for the said President and Directors, their agents, &c., to enter, at all times, upon any lands and waters, for the purpose of exploring, surveying, leveling or laying out the route or routes of such railroad, or lateral and branch roads, and of locating the same, and to do and erect all necessary works, buildings and appendages thereof, doing no unnecessary injury to private or other property ; and when the route or routes of such road, or lateral and branch roads, shall have been determined upon, and a survey of such route or routes deposited in the office of the Secretary of State, then it is made lawful for the said Company, by its officers, agents, engineers, superintendents, contractors and workmen to enter upon, take possession of, hold, have, use, occupy and excavate any such lands, and to erect embankments, bridges, ferries, and all other works necessary to lay rails, and to do all other things which shall be suitable or necessary for the completion or repair of the said road or roads, subject to such compensation as is afterwards

provided by the act; provided always, that the payment or tender of payment of all damages for the occupancy of lands through which the said road or roads may be laid out, be made before the Company, or any person under their direction or employ, shall enter upon or break ground in the premises, except for the purpose of surveying and laying out said road or roads, unless the consent of the owner of such lands be first had and obtained.

Sec. 7. When the Company cannot agree with the owner or owners of such required lands for the use or purchase thereof, a particular description of the lands so required for the use of the Company in the construction of said road shall be given in writing, under the oath of some proper agent of the Company, and also the name and residence of the owner, to a Justice of the Supreme Court, who shall cause the Company to give notice to the person interested, and to assign a time and place for the appointment of commissioners; at which time he shall appoint three freeholders commissioners to examine and appraise the land, and to assess the damages, upon notice to be given to the person interested of the time and place, &c. ; and it shall be the duty of the commissioners to meet at the time and place appointed, and to view and examine the land, and to make a just and equitable appraisement of the value thereof, and assessment of damages, as shall be paid by the Company for such lands and damages, which report shall be made in writing, under the hands and seals of the commissioners, or any two of them, and filed, within ten days thereafter, together with the aforesaid description of the land and the appointment aforesaid, in the Clerk's office of the county in which the land is situate ; which report, or a certified copy thereof, shall at all times be considered as plenary evidence of the right of the Company to have, hold, use, occupy, possess and enjoy the said land, or of the owner to recover the amount of said valuation with interest and costs, in an action of debt against the Company, if they shall neglect or refuse to pay the same for twenty days after demand made of their treasurer; and shall, from time to time, constitute a lien upon the property of the Company in the nature of a mortgage.

Sec. 8. In case the Company or the owner of the said land shall be dissatisfied with the report of the commissioners, and shall ap-

ply to the Supreme Court, at the next term after the filing of the said report, the court shall have the power, upon good cause shown, to set the same aside, and thereupon to direct a proper issue, and to order a jury to be struck, and a view of the premises to be had, and the said issue to be tried at the next Circuit in said county; and it shall be the duty of the jury to assess the value of the land, and damages sustained; and if they find a greater sum than the commissioners have awarded, then judgment thereon, with costs, shall be entered against the Company, and execution awarded therefor; but if the jury shall be applied for by the owner, and shall find the same or a less sum than the Company shall have offered or the commissioners awarded, then the costs to be paid by said applicant, and either deducted out of the said sum found by the jury, or execution awarded therefor, as the court shall direct; provided, that such application shall not prevent the Company from taking the said land upon the filing of the aforesaid report.

Sec. 13. The said Company may have and hold real estate at the commencement and termination of said road or roads at Somerville and the Delaware river, and at intermediate depots upon the line of said road, not exceeding five acres at each place, and may erect such buildings and improvements thereon as they may deem expedient; and shall also have the privilege to erect, build, and maintain, at the Delaware river, or within thirteen miles of the borough of Easton, such wharves, piers, bridges and other facilities as they may think expedient and necessary for the full enjoyment of all the benefits conferred by this act; which said lands shall be obtained in the manner provided for in the 7th section of this act.

Sec. 14. As soon as the said road with its appendages shall be finished so as to be used, the President and Treasurer of the Company shall file, under oath or affirmation, a statement of the amount of the cost of said road, including all expenses, and the amount of all purchases made by virtue of this act, in the office of the Secretary of State; and annually thereafter, make, under oath or affirmation, a statement to the Legislature of the proceeds of the road, until the net income thereof shall amount to 6 per cent. upon the amount of its cost; and as soon as that takes

place, the Company shall pay to the Treasurer of the State a tax of one and one half per cent. on the cost of the road annually thereafter.

Sec. 15. The Company may borrow, from time to time, such moneys as shall be necessary to build or repair said road and furnish engines, &c., and secure the payment thereof by bond and mortgage on the road, privileges and franchises of the Company.

Sec. 16. At any time after 50 years from the completion of the road, the State may cause an appraisement thereof and of its appendages to be made by, &c.; and thereupon the State shall have the privilege, for three years, of taking the said road, upon the payment to the Company of the amount, &c., within one year after electing to take the road; and it shall be the duty of the President of the Company to lay before the Legislature, under oath or affirmation, when they shall so request, a full and fair statement of the cost of said road, and of all the receipts and disbursements of the Company.

Sec. 17. If the said railroad shall not be completed and in use at the expiration of seven years from June 4, 1847, the act shall be void.

Sec. 18. The Legislature shall have the right to subscribe for the stock of the Company to the amount of $25,000, at any time before or within twelve months after the said road or roads are completed.

Sec. 19. This act shall be deemed and taken to be a public act, and be recognized as such in all courts, &c.

The Constitution of this State, adopted June 29, 1844, provides, in Art. 1, ¶ 16, that "Private property shall not be taken for public use without just compensation; but land may be taken for highways as heretofore, until the Legislature shall direct compensation to be made.

And in Art. 4, § 7, ¶ 9, that "Individuals or private corporations shall not be authorized to take private property for public use without just compensation first made to the owners."

I am of opinion that, under the last clause of the Constitution, this corporation could not be authorized, by act of the Legislature, to take land for the construction of their road, without compensation therefor being first made to the owner.

Does the act incorporating this Company authorize them to do so ?

The 6th section, in view of the constitutional provision, and which must be taken to have been the view of the Legislature, must be read, I think, as authorizing the Company to lay out and construct a railroad ; to enter upon lands for the surveying and laying out the route ; to enter upon and take the land for the purpose of constructing the road ; provided the payment or tender of payment of all damages for the occupancy of the land through which the road is so laid out be made before the Company enter upon the land, except for the purpose of surveying and laying out the road ; that is, before the Company shall enter for the purpose of constructing the road, and thus appropriating it to their use, which, I apprehend, the Legislature understood to be the *taking* of the land, in the sense of that word as used in the Constitution. The entry for the purpose of surveying and laying out the road was not considered as a taking of the land.

We have, then, a provision in this section that, before the Company can take the land, they must pay or tender all damages for the occupancy of it.

But no mode of ascertaining the damages is, thus far, provided ; that is done by subsequent sections of the act ; and the act would have been incomplete if it provided no mode of ascertaining the damages which the Company are to pay or tender before taking the land. This shows that the provision in this section for such payment or tender has a connection with the subsequent provisions of the act. The damages must be ascertained before they can be paid or tendered.

The 7th section provides, that when the Company cannot agree with the owner of the land, or when, by reason of the legal incapacity or absence of the owner, no agreement can be made, a description of the land, with the name and residence of the owner, shall be given in writing to a Justice of the Supreme Court, who shall appoint commissioners to appraise the lands and assess the damages ; that it shall be the duty of the commissioners to make an appraisement " of the value of the same and assessment of the damages as shall be paid by the Company for

such lands and damages aforesaid;" which report shall be in writing, and filed, &c., to remain of record ; which report shall at all times be considered as plenary evidence of the right of the Company to have, hold, use, occupy, possess and enjoy the land, that is, upon the payment or tender, according to the proviso of the 6th section, of the value of the land and assessment of the damages as shall be paid by the Company for such lands and damages aforesaid, reported by the commissioners under this 7th section.   The latter part of this 7th section, viz. : " or of the said owner (*i. e.* that the report shall be plenary evidence of the right of said owner) to recover the amount of said valuation, with interest and costs, in an action of debt against the Company, if they neglect to pay for twenty days after demand, and shall from time to time constitute a lien on the property of the Company, in the nature of a mortgage," applies to the owners mentioned in the first part of this 7th section, with whom, by reason of their legal incapacity or absence, no agreement can be made.

There can be no doubt that if the charter stopped here, it would be constitutional.   It is not claimed that the ascertainment by commissioners of the value and damages to be paid is unconstitutional.

The 8th section provides, that if the Company, or the owner of the land shall be dissatisfied with the report of the commissioners, and shall apply to the Supreme Court, the court shall have power, upon good cause shown, to set the same aside, and thereupon to order a trial by jury ; and that the jury shall assess the value of the land and damages sustained ; and if they find a greater sum than the commissioners awarded in favor of the owner, then judgment thereon, with costs, shall be entered against the Company, and execution awarded therefor ; but if the jury be applied for by the owner, and shall find the same or a less sum, then the costs to be paid by said applicant, and either deducted out of the sum found by the jury, or execution awarded therefor, as the court shall direct, provided that such application shall not prevent the Company from taking the land upon the filing of the said report.

If this section means, that the Company may express dissat-

isfaction with the report, and may, notwithstanding such dissat-
isfaction expressed, take the land upon the filing of the report,.
without paying or tendering the amount found by it, and apply
for a jury, and that the owner is only to have his judgment and
execution for the amount found by the jury, and to rely on that,
this part of the law would be unconstitutional.

This cannot be the meaning of this section as it stands con-
nected with the other provisions of the charter. We have seen
that if the Company conclude to take the land on the filing of
the commissioners' report, they can only do it by paying or ten-
dering the amount of that report. The proviso at the end of the
8th section, that such application shall not prevent the Company
from taking the land upon the filing of the commissioners' report,
means taking in such way and on such terms as the charter au-
thorizes them to take it, viz. : by paying or tendering the amount
of that report.

It may be that the words "such application" in this proviso,
relate to the application spoken of in the latter part of the sec-
tion ; the last provision of the section, preceding the proviso, is,
"but if the jury shall be applied for by the owner, and shall
find the same or less, &c., the costs shall be paid by the appli-
cant ;" (then follows the proviso,) provided such application shall
not prevent the Company from taking the land upon the filing of
the report. I am inclined to think, that the Legislature did not.
contemplate that the Company would pay the amount reported
by the commissioners, and take the land, and also apply for a
jury.

But this section does not give the Company the right to ap-
ply for a jury ; and possibly the meaning may be that upon
either application the Company may take the land upon the filing
of the commissioners' report ; but certainly the court would not
so construe the act that they might do it, on their own applica-
tion for a jury, without first paying or tendering the amount.
found by the commissioners. It cannot be supposed that the
Legislature, after. making the proviso contained in the 6th sec-
tion, would enact another section to operate entirely independent
of that proviso, by which the Company could take the land with-
out first paying or tendering. The proviso in the 6th section.

must therefore be held to govern the whole charter ; and the 8th section must receive a construction, if possible, consistent with that proviso.   Its provisions are somewhat blind, and it may be that it was carelessly drawn.   If it was intended to provide a mode of taking the land without reference to the proviso in the 6th section, and independently thereof, its provisions are imperfect to that end.   There is no provision in it that if the jury find the same or a less sum than the commissioners awarded, judgment shall be entered and execution awarded for it.   The provision is, that if the jury shall find the same or a less sum, and the jury was ordered on the application of the owner, the owner shall pay the costs, and that the costs shall either be deducted out of the sum found by the jury, or that execution shall be awarded therefor.   This provision is consistent with the proviso to the 8th section, " that such application shall not prevent the Company from taking the land upon the filing of the report," (upon paying the amount of the report, as before construed to mean.)   If the owner applies for the jury, the Company may, or not, before the jury trial, take the land by paying or tendering the amount of the commissioners' report.   If they do pay or tender the amount and take the land, then, if the jury find the same or a less sum, the act seems to contemplate nothing further to be done except in reference to costs.   These costs are to be either deducted, as aforesaid, or execution awarded therefor, as the court shall direct.   This seems to provide for the state of things that may then exist, according as the Company may have taken the land and paid the money, or not.

If the owner applies for the jury, and the same or a less sum be found, there is no provision for a judgment against the Company.   According to my construction of the act, the Company may, at any time after the award of the commissioners, pay the amount of the award and take the land.   If they have paid and taken the land, then, if the jury find the same sum, the matter is ended, except an execution against the owner for costs ; and the provision seems to be the same if the Company has paid the award and the jury find less than the award.   There seems to be no provision for the Company to recover back the excess of the award over the sum found by the jury.   If the Company

have not paid the award and taken the land, and the jury find the same sum or less, then the costs are to be deducted out of the sum found by the jury. But there is no provision for a judgment, in this state of things, against the Company for the amount found by the jury, or for the amount of the award. Are the Company, then, to take the land without paying, and the owner not even to have a judgment for it? I apprehend that the absence of any provision for a judgment, in this part of the section, shows clearly that it was contemplated that the Company, under the charter as a whole, could not take the lands without first paying.

Again : a preceding part of this section provides that if the jury find a greater sum than the commissioners awarded, (whether the Company or the owner applied for the jury,) judgment thereon, with costs, shall be entered against the Company, and execution awarded therefor. Does this necessarily mean that the Company may thereupon take the land without first paying? I apprehend not. In reference to this, as well as to the succeeding clause of this section, (considered above,) the Company, under the proviso to the 8th section, may have paid the amount of the commissioners' award and taken the land, previous to the jury trial. If they have, is a judgment to be entered against the Company, and execution issue against them for the whole amount found by the jury, or only for the excess of that amount over the award of the commissioners, which by the supposition has been paid, and costs? To construe the act altogether in view of the constitutional provision, it may be supposed that the Legislature intended, in such case, that judgment should be entered and execution issued for such excess. If the Company have not paid the award of the commissioners and taken the land before the jury trial, and the jury find a greater sum, was it contemplated that the Company could take the land without first paying, and leave the owner to the judgment and execution against the Company? The court would be slow to adopt such a construction of this clause of this section, in view of the proviso to the 6th section, and would rather say, and particularly as the succeeding clause in this same section leads, as we have seen, to a like result, that there also the meaning is, that judg-

ment shall be entered for the excess, leaving the proviso of the 6th section to operate upon and require the payment of the commissioners' award before taking the land. But even if, by the words of this clause, a judgment is to be entered against the Company for the whole sum found by the jury, when that sum exceeds the award of the commissioners, it does not necessarily follow that the Company can take the land without first paying. The court, I think, should hold that the parts of the act providing a mode for ascertaining the amount of compensation and damages are also subject to and governed by the general provision made in the 6th section, that the payment or tender of all damages for the occupancy of the lands be made before entering upon or breaking ground for the purpose of constructing the road.

There are, certainly, views in reference to the constitutionality of the act, growing out of the 8th section, which are difficult. This section relates to proceedings beyond the award of the commissioners. If the act had stopped at the award of the commissioners, and made that final, and authorized the Company to take the land on the payment of the amount of that award, the charter would be simple and free from complication or difficulty of construction ; and would be, as is admitted by the counsel for the complainant, constitutional. There is a propriety in not making that award final, and in providing for a trial by jury. It is from the provisions of the act providing for such trial, and the provisions authorizing the taking of the land before the trial is determined, (by paying, &c. as I have supposed,) that the difficulties arise. It seems to have been the general idea of the draftsman of the charter, and of the Legislature, that inasmuch as they might have stopped at the award of commissioners, and authorized the Company to take the land on paying the amount of the award, (that award being a fair and constitutional means of ascertaining the compensation and damages,) a provision beyond that, giving the owner a chance of getting the sum enlarged, and the Company the chance of getting it diminished, by the action of a jury, would not render the act unconstitutional. And I am disposed to think it would not, if the Company are, by the act, at all events to pay, either the award of the commis-

sioners or the amount found by the jury, before they can take the land. And I think that by the fair construction of the act they must do one or the other. If they want to take the land before a jury has passed upon the matter, they must pay or tender the amount of the award. If the amount is received by the owner, and the Company apply for a jury, whether they could recover back from the owner any excess they may have paid over the amount found by the jury, is a question in reference to which the act will be explained by the court to which such question may be (if ever) presented.

If the Company tender to the owner the amount of the award of the commissioners, and the owner, refuses to receive it, and applies for a jury, and the Company, upon such tender and refusal, take the land, what is the position of things under this act. The Company have taken the lands upon making the tender of the amount of the award. The owner has not received the money. The Company have got the land, and the owner has not got the money. There is no provision in the act requiring the Company, in such case, to deposit the money tendered in some place where the owner may get it when he is willing to receive it. Does the act mean that such tender shall be equivalent to payment so far that if the owner applies for a jury he must rely upon a judgment and execution against the Company to get his money? It may be contended that if he would not accept the amount found by a fair and constitutional mode, under an act which provides for nothing but a judgment and execution, if he applies for a jury, he must be considered as preferring a judgment and execution for the larger sum he expects the jury to find, to the receiving, in hand, the amount awarded by the commissioners. But the jury may find a less sum; and in that case there is no clear provision in the act that the owner shall have judgment and execution. If, by construction, it is to be held that in either case the owner is to have judgment and execution for the amount found by the jury, deducting the costs in the latter case, then we stand yet on the other position, that he must be held to prefer a judgment and execution for the larger sum he expects the jury to find, to the amount of the award, in hand. It is not, necessary now to consider this part of the act

more particularly.   The injunction applied for was against any assessment being made by the commissioners.   We have not, therefore, yet reached what may be the difficulties of the statute, upon the constitutional question.   And I am disposed to think that upon this part of the case the questions, when they arise, will be such that this court will think it more discreet to leave them to the regular decision of the courts than to interpose by injunction.

It is, I believe, the first charter with like provisions and absence of provision, under the new constitution.   It may have been carelessly drawn, or it may have been designedly drawn as it is, under the belief that it is a sufficient compliance with the provisions of the constitution, in the most objectionable construction that can be put upon it in reference to the constitutional question.   It must be supposed that the Legislature thought it sufficiently complied with the constitution.   The question is an interesting one in reference to future legislation and the interests of land owners ; and it is important that it should be presented to and acted upon by the courts in such way that it may receive the adjudication of our court of last resort, directly, disconnected with any such questions of discretion or jurisdiction in this court as, if it should reach the Court of Appeals on appeal from the action of this court in granting or denying an injunction might leave it not satisfactorily decided by a reversal or affirmance of the order of this court granting or denying the injunction.   I am of opinion, therefore, upon this part of the case, that this court ought not to interpose by injunction.

The next question is, whether, under this act, commissioners ought to be appointed until the route of the whole road shall have been determined upon and a survey of such route deposited in the office of the Secretary of State.   The company is incorporated by the name of " The Somerville and Easton Railroad Company," with a capital of $1,200,000, with liberty to increase it to $2,000,000 ; power is given to survey, lay out and construct a railroad from Somerville to Easton ; and the general course of the road is designated ; with a branch to Belvidere.   The company may hold real estate at the commencement and termination of the road, at Somerville and the Delaware river, and at inter-

mediate depots upon the line of the said road, not exceeding five acres at each place. When the road is finished, the President and Treasurer of the Company shall file, under oath, a statement of the cost of the said road, including the amount of all purchases made by virtue of the act, in the Secretary's office; and, annually, a statement to the Legislature of the proceeds of the road, until the net income of the road shall amount to 6 per cent. upon the costs; and after that, the company shall pay the State a tax of one half of one per cent. on the cost of the road, annually; the company shall have power to borrow money to construct or repair the said road, &c., and to secure the payment thereof by mortgage on the said road, lands, privileges and franchises of the corporation. After fifty years, the State may take the road by paying, &c., within one year after electing to take the said road; and it is made the duty of the President of the company to lay before the Legislature, under oath, when they shall so request, a statement of the cost of the road, and of all the receipts and disbursements of the company. If the said railroad shall not be completed and in use in seven years from June 4, 1847, the charter shall be void. The State shall have the right to subscribe $25,000 of the stock of the company any time before or within twelve months after the said road or roads are completed; and the act is declared to be a public act.

From these provisions it is evident that the work contemplated by the act, and which it authorizes the company to construct, is a railroad from Somerville to Easton. We have no right to assume that the Legislature would have incorporated a company to construct a road from Somerville to any point short of Easton; and certainly no court, either of law or equity, would be willing, by any action in reference to any provision of this act, to sanction or give any countenance to the idea that the company may make a road to any intermediate point, and there stop, and enjoy the privileges of this act in reference to the part of the road so constructed. If this could be done, a tract of land might be purchased, situate a few miles beyond Somerville, by persons having the control of the stock of the company, and a road made to that point, stopping there, with a view to increase the value of those lands. We cannot suppose that the Legislature intended

that under this act the company could deprive Somerville of the advantage it now has, and give it to some point or place a little further in the interior ; which would be the case unless the road goes to its western terminus, Easton.   The road, by this act, is to be constructed to Easton, and the company cannot stop short of it ; and before the road can be constructed, the route of it must, of course, be laid out and located.

This brings us to the question whether the company are at liberty, under the provisions of this act, to locate a part of the route, and to apply for commissioners of valuation and damages as to that part ; or whether the whole route should not be located before commissioners for the valuation of any part be applied for.

The 6th section authorizes the company to lay out and construct a road from Somerville to Easton ; and to enter upon all lands " for the purpose of exploring, surveying, leveling, or laying out the route or routes of such railroad, or lateral and branch roads, and of locating the same ; and to do and erect all necessary works, buildings and appendages thereof, doing no unnecessary injury to private or other property ; and when the route or routes of such road or lateral and branch roads shall have been determined upon, and a survey of such route or routes deposited in the office of the Secretary of State, then it shall be lawful for the company to enter upon, take possession of, hold, have, use, occupy and excavate any such lands, and to erect embankments, bridges, ferries, and all other works necessary to lay rails, and to do all other things suitable or necessary to the construction or repair of the said road or roads, subject to such compensation as is hereinafter provided ; provided always, that the payment or tender of payment of all damages for the occupancy of lands through which the said road or roads may be laid out be made before the company shall enter upon or break ground in the premises, except for the purpose of surveying and laying out said road or roads, unless the consent of the owner of the land be first had and obtained."   It is difficult to understand that clause of this section which follows the authority to survey and lay out the route ; that is to say, the clause " and to do and erect all necessary works, buildings and appendages thereof, doing no

unnecessary injury to private or other property." But nothing was claimed in argument from the force of these words, and could not be successfully; for the whole section is governed by the proviso ; and that declares that before the company shall enter upon or break ground in the premises, except for the purpose of surveying and laying out the road, they shall pay or tender all damages for the occupancy of the land.

The provisions immediately applicable to the present question are, sec. 6, as follows : when the route or routes of such road or lateral and branch roads shall have been determined upon, and a survey of such route or routes deposited in the office of the Secretary of State, then it shall be lawful for the company to enter upon, take possession of, hold, have, use, occupy and excavate any such lands, and to erect all works necessary to lay rails, and to do all other things suitable or necessary, &c., upon the payment or tender of all damages being first made.

And, sec. 7, as follows : when the company cannot agree with the owner or owners of such required lands, a particular description of the land *so required* for the use of the company, in the construction of the said road, shall be given in writing, &c., with the name and residence of the owner, to a Justice of the Supreme Court, who shall cause, &c. ; at which time he shall appoint commissioners to examine and appraise the *said* land ; and it shall be the duty of the commissioners to examine the *said* land, and make a just estimate of the value of the same, and assessment of damages as shall be paid by the company for *such* lands and damages aforesaid ; which report shall be made, &c., and shall be considered as plenary evidence of the right of the company to have, hold, &c., the said land.

What is the meaning of the terms " such required lands," " the land so required," and " the *said* land ?" The charter could not mean that the company could present to a Justice of the Supreme Court a particular description of any land they pleased, or of any land they might merely think might be required (though it might afterwards turn out that such lands would not be required) for the construction of the road, and to have them assessed, that they might pay or tender, and get a title to them. The Legislature could not have intended to give the com-

pany any such latitude as this.   A man is not to be compelled
to sell his land for a price that others may put upon it, except
in such case as the Legislature may enact to be a justifying ne-
cessity or reason for compelling him to do so ; and it is for the
Legislature to provide that such justifying necessity or reason
be made to appear by the party who is authorized to constrain
such sale.   Courts will look carefully into the language of an act
of incorpation giving such authority, before they will conclude
that the Legislature have provided no means in it for ascertain-
ing the existence of such necessity or justifying reason.   There
is language in this act abundantly sufficient to show that the
Legislature intended to require, and did require, that such ne-
cessity or reason should be made to appear, and did incorporate
in the act a means or requirement for ascertaining the existence
of such necessity or reason.   They were the judges of what
that means or requirement should be, and to adjudge such rea-
son or necessity to exist upon any act or thing less cogent in
proof of it than the Legislature have required, would be to in-
vade the province of legislation.

What, then, is the act in this respect ?   It authorizes the
company to lay out and construct a road from Somerville to
Easton ; and to enter upon all lands for the purpose of laying
out the route of such road, and of locating the same ; and
provides that when the route shall have been determined
upon, (that is, when the route or road is located,) and a
survey of such route deposited, &c., it shall be lawful
for the company to take and excavate any *such* lands, (that
is, any lands upon the route of said road as located to
*Easton*, not as located for a mile or ten miles,) and to do all
other things suitable or necessary for the completion of the said
road ; provided the payment, &c., for the occupancy of lands
through which the *said* railroad (that is, the railroad to Easton,)
may be laid out, be made, &c., unless the consent of the owner
or owners of *such* lands be first had ; provided that the said road
shall in no way impair the rights of the Camden and Amboy R.
R. & T. Co., and Delaware and Raritan Canal Co., in the trans-
portation of passengers or merchandize between Philadelphia
and New York, &c.   That, when the company cannot agree with

5

the owner or owners of *such required lands*, a *particular* description of the *land so required* for the use of the company in the construction of the *said* road shall be given in writing, &c., to a Justice of the Supreme Court, who shall appoint commissioners to examine the said land, &c.

I think it plain that the survey and location provided for by the 6th section is a survey and location of the whole road, or *the* route of the whole road, and that such survey is the mode prescribed by this act for ascertaining the lands which will be required by the company for the construction of the road; and that the phrases, in the 7th section, " such required lands," and " the land so required for the use of the company in the construction of the said road," refer to the lands which, by the mode prescribed in the 6th section, are found to be required.

A mere description of lands presented to the Justice of the Supreme Court does not show that the lands so described are required for the use of this company in the construction of the proposed road. The Justice wants the evidence that the lands described are required for the road; else why authorize an assessment of the value thereof, and enable the company to make a tender of the amount for the purpose of acquiring title thereto. And he must have the evidence required by the act; and the terms " such required lands," and " the land so required," in the 7th section, can have no other meaning than such lands as the survey and location of the route of the road, provided for in the 6th section, show to be required. That some evidence was necessary that the lands asked to be assessed are required, the company are aware. They have surveyed a strip of land about eight miles long, extending from Somerville to the White House road, and say that that is the location of part of the route of the road from Somerville to Easton, and that it runs over and occupies land which they now ask to be assessed; and they say that this partial survey of the route is sufficient evidence that these lands will be required for the construction of the road from Somerville to Easton, authorized by the charter. But the question is not what is sufficient evidence to the mind of a Judge; it is, what evidence of it the Legislature have required. They might apprehend that it was impracticable to make a road to Easton,

and might be unwilling that a road should be made but part of the way. They certainly had the right to require what evidence they saw fit that *the* road, *inter terminos*, could be made; and is a survey of the route of *the* road which the company ask authority to make, too strong evidence of its practicability to be required by the Legislature? Their will cannot be gainsaid, nor will their wisdom in this respect, I apprehend, be impugned. There is but one survey and location mentioned, and that is a survey of the whole route. There is no provision for a survey and location of a mile or ten miles, and an appointment of commissioners as to that. What evidence does a survey and location of a mile or ten miles give of the practicability of constructing at all, or with the capital granted, the whole road? What reason can be given why the company should not be required to survey and locate *the* route of *the* road? Is there any impropriety, much less hardship, in requiring it? If they intend to make the road, it must be done; and it must be done before *the* road can be made. The only answer that can be given by the company is that if they are permitted to survey in parts, and get hands immediately to work on the parts surveyed, they can have the road finished sooner. But the only delay, even according to this answer, is their own delay in making a survey and location of the route; a delay which certainly the Legislature never contemplated to be sufficient to forbid the requirement of a survey and location of the whole route. If the delay which has occurred in making the survey and location, or which the company apprehend in making it, arises from the difficulty of the ground, the wisdom of the Legislature in requiring this evidence of the practicability of the work is the more manifest.

The idea of the company's complaining of a delay occasioned by their own omission to survey and locate the route of the road is somewhat amusing; and their asking to take lands without the evidence of the necessity therefor which the Legislature have required them to give, and which is at any time in their own power, is not less so.

It is said that sufficient has been done to make it evident that the lands of which they now ask an appraisement are required.

This may be so, or may not be so. But whether so or not, it is not the evidence which the Legislature required. The survey and location from Somerville to the White House may be evidence that a road can be made between those points, but is not evidence that a road can be made from Somerville to Easton; and if it cannot, then the company have no authority to take any lands whatever. The question involved is the same as if the company had surveyed and located a mile of route through a man's farm lying south of Clinton, and thereupon asked the appointment of commissioners to appraise it, without having located any other part of their route.

The survey of a mile so situated would not show that that mile was required for the road. It might appear, on a survey of the whole route from Somerville to Easton, that it was impracticable to carry the road south of Clinton, or so difficult that a route north of it should be taken.

Upon the best consideration I have been able to give the subject, I am strongly of opinion that both the letter and spirit of the act, and a just consideration of the rights of the landholder, and of the danger of judicial latitude in the construction of railroad charters, or of judicial dispensation with the requirements of such charters, require that the company should survey and locate their whole route before applying for commissioners to value any of the lands.

The next question is, whether this court ought to interpose by injunction. The injunction prayed for is, that the company may be restrained from having any assessment of the complainant's lands made; and from taking possession of, using or occupying, in any way, the lands of the complainant described in said pretended location. The latter part of the injunction prayed is disposed of by the view I have taken of the constitutional question. The company would not be injoined from taking the land, if legally appraised, on the payment or tender of the amount of the commissioners' appraisement. The present inquiry, therefore, relates to the injoining the company from having any assessment made. Is it the duty of the court to injoin an assessment? The question of the right to have an assessment made before a survey and location of the whole route is made

and deposited is a strict legal question, belonging to the law courts, and should be left with them, unless some ground is laid on which this court should interpose its preventive action. The assertion of a right, the existence or non-existence of which is properly determinable at law, and the exercise of which will do no injury to the person denying it, does not seem to furnish a ground for injunction. If an assessment should be first made, and a survey and location afterwards made, occupying the same lands that had been assessed, this court would not injoin the further proceedings of the company on the ground that the survey and location were not made before the assessment; but would leave the question whether the asessment could legally be made before the survey and location to the law courts, for the reason that no such injury could arise to the owner from changing the order of time in which these two things were done as would require the interposition of this court by injunction. The assessment itself could do no injury.

If, after the assessment shall be made, the company evince an intention to take the lands assessed without making a survey and location of the whole route, and covering the lands so assessed, so as to show that these lands are required for the road, and an injunction should be prayed, still it would be a question whether it would be a case for an injunction. If the charter gives no legal right to enter upon the land for the purpose of constructing the road until a survey and location of the whole route be made, such entry would be but a trespass.

An injunction against a trespass is not granted except on the special ground of irreparable injury. In this case, the existence of any such special ground would be altogether uncertain. If the road shall be finally surveyed, located and constructed through to Easton, and the route of it shall cover the ground assessed, the complainant will have sustained no injury—that is to say, no injury which any court can redress; for it is the injury which the act authorizes the company to do him. The only injury he could complain of would be the taking his land before the whole route was surveyed and located; but that would be no such irreparable or serious injury as to induce an injunction.

This act contains a provision, that unless the road from Som-

erville to Easton be completed and in use in seven years from June, 1847, the act shall be void. This gives sufficient assurance that the whole road will be made within that time. And if it is to occupy, as part of it, the land of the complainant, which the court must regard as, at least, very probable, if the company pay for it and take it, then no such injury is impending over the complainant as calls for an injunction against an assessment.

The idea that, after finishing a part, the company may apply to the Legislature to allow them to use that part without finishing the whole cannot have any influence in the present inquiry. The act requires the whole to be finished within a given time, under the penalty of forfeiting the charter. These are considerations which may fairly influence the discretion which this court exercises in reference to the use of the power of injunction. A court of law must pronounce upon the strict legal question involved. But the want of strict legal right to do an act will not always command the injunction of this court.

Injunction denied.